IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEANN DAVIS,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CHASE COUNTY SCHOOL DISTRICT NUMBER 536 A/K/A WAUNETA-PALISADE PUBLIC SCHOOLS, et al.,<br><br>　　　　　　　Defendants. | 7:17-CV-5007<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the defendants' motion for summary judgment. Filing 18. For the reasons set forth below, the Court will grant that motion, and Davis' amended complaint will be dismissed.

## BACKGROUND

From 2007 until she was terminated on December 2, 2016, the plaintiff, Deann Davis, worked as an administrative assistant for the primary defendant, Chase County School District. Filing 20 at 3. During the fall of 2016, Davis' son, Tyler, was also a student in the Chase County School District. Filing 20 at 3. Unfortunately, Tyler was accused of engaging in some questionable behavior. Specifically, Tyler was accused of doing "something inappropriate with another students' pop can after a football game." Filing 10 at 5. Although Tyler denied those charges, he was not permitted to play in the next football game. Filing 10 at 5.

After Tyler's temporary football suspension, Davis and her husband met with Superintendent Rand Geier, Wauneta-Palisade Principal Joseph Frecks,

and a school counselor to discuss Tyler's behavior. Filing 10 at 6. Although the meeting appeared to go well, Tyler apparently continued to act inappropriately. Filing 10 at 7-8. Eventually, Tyler was also kicked off the basketball team. Filing 10 at 7-8. This prompted Davis and her husband to transfer Tyler to a different school in a different school district. Filing 10 at 7. A few days after Tyler transferred, Davis' employment with the Chase County School District was terminated. Filing 10 at 8.

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir.

2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

DISCUSSION

Davis claims that she was unlawfully fired because she advocated for her son. *See* filing 10 at 9. That termination, Davis contends, violated the following constitutional and statutory provisions:

1. The right to free speech as protected under the First Amendment of the U.S. Constitution. Filing 10 at 11.

2. The right to due process pursuant to the Fourteenth Amendment to the U.S. Constitution.[1] Filing 10 at 11.

3. Various rights under the Equal Opportunity in Education Act, Neb. Rev. Stat. § 79-2,114 *et seq*. Filing 10 at 10.

4. The right to accrued wages under the Nebraska Wage Payment and Collections Act, Neb. Rev. Stat. § 14–813. Filing 10 at 12.

---

[1] Davis also raises due process violations pursuant to the Fifth Amendment of the U.S. Constitution. Filing 10 at 11. But the Fifth Amendment applies to the federal government. *See e.g.*, *Warren v. Gov't Nat. Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980). There are no federal entities in this lawsuit, so, that allegation has no merit.

3

The School District and its employees have moved for summary judgment on each of Davis' allegations. For the reasons set forth below, the Court will grant that motion, and Davis' claims will be dismissed.[2]

## I. CONSTITUTIONAL VIOLATIONS

As noted above, Davis claims that her First and Fourteenth Amendment rights were violated. Filing 10 at 11. Those constitutional claims are brought against the School District and the School District's employees in their official and individual capacities. The Court will first evaluate Davis' official capacity claims before addressing Davis' claims against Geier and Frecks in their individual capacities.

### OFFICIAL CAPACITY

#### *(A) School District*

A local governing body, such as a School District, can be held liable under § 1983 only where the local government itself causes the violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). *Respondeat superior* or vicarious liability will not attach under § 1983. *City of Canton*, 489 U.S. at 385; *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). But local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

---

[2] As the defendants correctly point out, Davis' supporting evidence was stricken at her request. Filing 24; filing 25. Davis has failed to properly submit the replacement affidavits. But even if that evidence were properly submitted, Davis' claims would still fail.

4

officially adopted and promulgated by that body's officers. *Johnson*, 725 F.3d at 828 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Generally speaking, to establish local liability under § 1983, Davis must prove the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct or a deliberate indifference to that conduct. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 646 (8th Cir. 1990); *see also Monell*, 436 U.S. at 691. But even in the absence of an official policy or a custom, the Supreme Court has made clear that though "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.*" City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). In that scenario, governmental liability attaches only where the decisionmaker possesses final authority to establish policy with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986) (plurality opinion); *Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 941 (8th Cir. 2015); *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Importantly, the Supreme Court has distinguished final policymaking authority from final decisionmaking authority. *Pembaur*, 475 U.S. at 481; *see also Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007). The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to governmental liability based on an exercise of that discretion. *Pembaur,* 475 U.S. at 481-82. Nor does the discretion to hire and fire necessarily include responsibility for establishing related policy. *Davison,* 490 F.3d at 659; *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995); *accord Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996) (noting the plaintiff's argument was flawed because of its

failure accurately to distinguish between authority to make administratively final decisions and authority to establish official government policy.)

The parties do not dispute that Superintendent Geier made the decision to terminate Davis. Filing 23 at 38-39; filing 19-1 at 2. That decision, however, gives rise to governmental liability only if Geier also had the authority to create final employment policy. *See Pembaur,* 475 U.S. at 481; *see also Praprotnik,* 485 U.S. at 124. But as the Board's Internal Board Policy makes clear, "[t]he Board of Education, under law, has the final responsibility of establishing policies for the district." Filing 19-1 at 22. Specifically, "the Board of Education . . . determines all questions of general policy to be employed in the governance of the Wauneta-Palisade Public Schools." Filing 19-1 at 19. And it is the Board of Education's duty to "initiate questions of policy . . . in matters of policy, employee employment or dismissal, salary schedules or other personal regulations . . . ." Filing 19-1 at 18.

Despite this clear language, Davis argues that Geier is the final policymaker because the superintendent is able to make decisions if there is no existing board policy. *See* Filing 19-1 at 7; *see also* filing 23 at 41. To support that contention, Davis points to Policy No. 2440. That policy empowers the Superintendent "to make the decision deemed best in the Superintendent['s] . . . professional judgment." Filing 19-1 at 15. And because the Superintendent can take action in those circumstances, Davis argues that the Superintendent is, in essence, creating policy. Filing 23 at 41.

The Court is not persuaded. For example, Policy No. 2440 only references the Superintendent's authority to make a decision in the absence of policy, but it does not authorize the Superintendent to actually *create* policy. Filing 19-1 at 15. And as explained above, that distinction is not insignificant. *See Pembeaur,* 475 U.S. at 481; *see also Praprotnik,* 485 U.S. at 124.

More fundamentally though, the remaining provision of Policy No. 2440 actually supports the conclusion that the Board of Education is the final policymaker. That policy states, in relevant part, that "[d]ecisions made in the absence of needed policy shall be reported to the Board and the Superintendent shall develop recommend policy to [the Board] to deal with similar matters in the future." Filing 19-1 at 15. That means, even when the Superintendent has the authority to make a decision, he is still expected to report that decision to the Board—and it is the Board's responsibility to create a policy to handle those types of decision in the future. *See* filing 19-1 at 15.

So, although Davis is correct that Geier has *some* decisionmaking authority, he does not have *final* policymaking authority. And without policymaking authority, no unconstitutional policy can be inferred from Geier's decision to terminate Davis' employment. *See Pembaur,* 475 U.S. at 481; *see also Praprotnik,* 485 U.S. at 124. As such, the Court will dismiss Davis' § 1983 claims against the School District. *Pembaur,* 475 U.S. at 481; *Dean,* 807 F.3d at 941.

### *(b) Individual Defendants*

The Court's disposition of Davis' claims against the School District is also dispositive of her claims against Geier and Frecks in their official capacities. It is well-settled that a suit against a governmental actor in his official capacity is treated as a suit against the government entity itself. *Alexander,* 718 F.3d at 766; *Brockinton v. City of Sherwood, Ark.,* 503 F.3d 667, 673 (8th Cir. 2007). Accordingly, summary judgment is also appropriate as to the individual defendants in their official capacities.

INDIVIDUAL CAPACITY CLAIMS

Although Davis' constitutional claims against Geier and Frecks in their official capacities will be dismissed, the plaintiff may proceed against them in their individual capacities unless they are protected by qualified immunity.

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ransom v. Grisafe*, 790 F.3d 804, 810 (8th Cir. 2015); *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1058 (8th Cir. 2013); *Bernini*, 665 F.3d at 1002; *Brockinton*, 503 F.3d at 671. This immunity applies to discretionary functions of government actors. *Ransom*, 790 F.3d at 810. An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right; and (2) the right was clearly established at the time of the violation. *Robinson v. Payton*, 791 F.3d 824, 828 (8th Cir. 2015); *Ulrich*, 715 F.3d at 1058; *Bernini*, 665 F.3d at 1002.

To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right. *Brockinton*, 503 F.3d at 672; *see Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006).

Here, Davis contends that Geier and Frecks are not protected by qualified immunity because their conduct violated two clearly established constitutional rights: the right to speak freely under the First Amendment, and the right to due process under the Fourteenth Amendment. Filing 23 at

37-40. But as the Court will explain in turn below, neither Davis' first amendment right, nor her right to due process, were actually violated by the School District's conduct. Thus, the Court will grant the defendant's motion for summary judgment on immunity grounds.

*(a) First Amendment*

To establish employer retaliation in violation of the First Amendment, a public employee must prove: (1) she engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action. *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017). Specifically, in *Garcetti v. Ceballos*, the Supreme Court noted two inquiries relevant to determining whether a public employee speech is protected against employer retaliation:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

547 U.S. 410, 418, (2006) (quotation omitted); see also *Lyons*, 875 F.3d at 1172.

Fleshing the first prong of that analysis out further, the Eighth Circuit has found that an employee's speech involves a matter of public concern when it relates to a matter of political, social, or other community concern. *Dahl v.*

9

*Rice Cty., Minn.*, 621 F.3d 740, 744 (8th Cir. 2010). But when speech relates both to an employee's private interests as well as matters of public concern, the speech is only protected if it is primarily motivated by public concern. *Bailey v. Dep't of Elem. & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006). Stated differently, if the main motivation for the speech was furthering Davis' private interests rather than to raise issues of public concern, her speech is not protected, even if the public would have an interest in the topic of her speech. *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007). An employee's primary motivation for her speech, is determined based on the speech's content, form, and context of a given statement, as revealed by the whole record. *Kincade v. City of Blue Springs, Mo*, 64 F.3d 389, 396 (8th Cir. 1995).

On the record as a whole, the Court concludes that Davis' speech was motivated by her private interests, rather than raising an issue of public concern. *Altonen*, 487 F.3d at 559. After all, Davis admits that she complained about Frecks and Geier because she was frustrated with how they handled Tyler's behavioral issues. Filing 19-4 at 57-58, 84-85. Davis also testified that because "she wasn't sure what to do with the [Tyler] situation," she attempted "to get some advice" from some of her co-workers. Filing 19-4 at 58. Davis elaborated on that, further explaining that she "didn't agree with the way things [with Tyler] went about," and was vocal about her son's struggles getting along with Geier and Frecks. Filing 19-4 at 59-60. And ultimately, Davis stated that she believes "[she] was fired for sticking up for" her son. Filing 19-4 at 81; *see also* filing 19-4 at 85.

So, by Davis' own admission, her speech was motivated by her own interest in understandably voicing her frustration with the situation among Frecks, Geier, and her son. *Cf. Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668,

672 (8th Cir. 1986) (finding that matters of public concern to include speaking about how the state institution is not properly discharging its duties, or is engaged in some way in misfeasance, malfeasance or nonfeasance); *see also* filing 19-4 at 84-85. Thus, because Davis' speech did not involve a matter of public concern, Davis has no First Amendment protection. *Garcetti,* 547 U.S. at 418.

### *(b) Fourteenth Amendment*

Next, Davis claims that she had a right to due process under the Fourteenth Amendment of the United States Constitution. Davis, however, fails to clearly identify whether her claim is procedural or substantive in nature (or both). Nevertheless, the Court construes Davis' complaint broadly and assumes Davis seeks to allege violations of both procedural and substantive due process. *See* filing 10 at 1-2.

### (i) Procedural Due Process

Davis appears to argue that she was terminated without adequate procedural due process. A public employee granted a state-law-protected property interest in continued employment may not be terminated without due process. *Groenewold v. Kelley,* 888 F.3d 365, 372 (8th Cir. 2018). A person must have a legitimate claim of entitlement to her employment to have a property interest in it. *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972). To have a property interest in her employment, there must be some other basis from which to claim entitlement to continued employment. *Voss v. Hous. Auth. of the City of Magnolia, Ark.,* 917 F.3d 618, 625 (8th Cir. 2019).

Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. *Id.* But here, there is no

11

contractual or statutory limitation that would provide Davis—as a non-certified, at-will employee, *see* filing 19-1 at 82-83—with a property interest in continued employment. *Groenewold,* 88 F.3d at 372. And without any expectation in continued employment, there can be no due process violation. *Voss,* 917 F.3d at 625.

In an attempt to circumvent that shortcoming, Davis argues that irrespective of the lack of continued expectation in her employment, a due process violation still occurred. This is true, Davis claims, because the School District did not comply with the Nebraska Equal Opportunity in Education Act. Neb. Rev. Stat. § 79-2,118; *see also* filing 23 at 34-37.

Under that statutory scheme, a person can file a written complaint with the governing body for any unfair or discriminatory practice allegedly undertaken by an educational institution. §§ 79-2,116 to 2,118. After receiving the complaint, the governing body has a few options: it can take the appropriate action to correct the discriminatory conduct, dispose of the complaint and notify the claimant of its findings, or it can choose not to act on the complaint at all, §§ 79-2,118 to 2,121. If the governing body chooses the last approach, refusing to respond, the claimant may file a lawsuit after 180 days of filing the formal complaint. § 79-2,121.

Here, Davis claims she did not receive adequate due process because the School District failed to respond to her formal complaint. Filing 23 at 37; filing 19-4 at 211-212. But that failure cannot possibly create a due process violation. After all, the Act expressly recognizes the School Board's ability not to respond to a complaint. § 79-2,121. And when this occurs, the legal remedy for that inaction is to file a lawsuit under that statutory scheme. *Id.* Nothing in the Act, or Davis' supporting brief, supports her contention that the School District's failure to issue a response to her complaint constitutes a procedural due

12

process violation. So, the Court will grant the defendants' motion for summary judgment on those grounds.

### (ii) Substantive Due Process

Next, Davis claims that Frecks and Geier violated her substantive due process rights. Filing 10 at 11. To establish a violation of substantive due process, a plaintiff "must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 815 (8th Cir. 2011).

Davis appears to argue that the Frecks and Geier violated her fundamental "liberty interest in the sanctity of her family." Filing 10 at 11. But Davis has pointed the Court to no authority supporting her contention that the sanctity of the family was violated in this case. *Cf. Washington v. Glucksberg,* 521 U.S. 702, 771 (1997); *Griswold v. Connecticut,* 381 U.S. 479, 502 (1965). And to the extent that Davis' substantive due process claim might be based on her right to engage in a specific profession, that right is not a fundamental right. *See* e.g.*, Robbins v. Becker,* 794 F.3d 988, 994 (8th Cir. 2015) (plaintiffs' allegations that they were deprived of the right to make a living and engage in their chosen occupation do not shock the conscience for due process purposes); *Wrench Transp. Sys., Inc. v. Bradley,* 340 F. App'x 812, 815–16 (3d Cir. 2009) (intangible employment rights such as the "right to engage in business" are not entitled to substantive due process protection); *Leib v. Hillsborough Cty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1306 n. 4 (11th Cir. 2009) (noting that

"employment rights do not enjoy substantive due process protection because such rights are . . . not 'fundamental' rights created by the Constitution").

Accordingly, the Court will grant the defendants' motion for summary judgment on these grounds.

## II. STATE LAW VIOLATIONS

Davis also asserts various state law violations against the defendants. The Court recognizes that it may continue to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(a) and (c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). But the Court can also decline to do so where "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(1). Having considered Davis' state law claims against School District, and factors such as judicial economy, convenience, fairness, and comity, *see Glorvigen v. Cirrus Design Corp.,* 581 F.3d 737, 749 (8th Cir. 2009), the Court declines to exercise supplemental jurisdiction.

Accordingly, the Court will remand Davis' remaining state-law claims.

IT IS ORDERED:

1. The School District's motion for summary judgment (filing 18) is granted.

2. Davis' § 1983 claims are dismissed.

3. This case is remanded to the District Court for Chase County, Nebraska.

4. A separate judgment will be entered.

Dated this 5th day of April, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge